## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

WAYNE G. GRIFFIN, *et al.*,

                         *

       Plaintiffs,

                         *

       vs.                            Civil Action No.   AW-09-1759

                         *

CHICAGO TITLE INSURANCE
COMPANY, INC.              *

       Defendant.

                         ******

## MEMORANDUM OPINION

Currently pending before the Court is the Defendant's Motion to Dismiss (Doc. No. 5) and Plaintiffs' Cross-Motion for Partial Summary Judgment (Doc. No. 10) in this action concerning a dispute over whether claims against the Plaintiffs involving the purchase of a property was covered under a title insurance policy with Defendant.  The Court has reviewed the entire record as well as the pleadings with respect to these motions and finds that no hearing is deemed necessary.  *See* Local Rule 105.6 (D. Md. 2008).  For the reasons discussed below, the Court will **DENY** both motions.

## FACTUAL BACKGROUND

Plaintiff, Jonathan Stevenson ("Stevenson"), entered into a contract ("Contract") on December 5, 2005, to purchase property from his step-grandmother, Carole Anne Johnson ("Johnson") for $65,000.  The Contract was amended on May 8, 2006, *inter alia*, to increase the purchase price to $80,000, add Stevenson's parents Plaintiffs Wayne and Yvette Griffin (the "Griffins") as co-purchasers, and to specify that the Plaintiffs would finance the purchase with a HUD 203(k) Rehabilitation Loan ("Amended Contract").  In September or October of 2006, Johnson informed Stevenson that she was having financial difficulty and needed to get rid of the property; in response Stevenson informed her that it was taking "longer than expected" to obtain

HUD financing.[1]  (Pl's Ex. 3.)  Johnson claims that sometime in December 2006, she sent a letter

to Harry James ("James"), real estate agent for Plaintiffs, informing them that she was going "to

look elsewhere."  (*Id.* at 41-42.)  However, she did not keep a copy of the alleged letter and

never received a response.  James and Plaintiffs deny ever receiving the letter from Johnson or

any other written or verbal communication indicating Johnson's intent to rescind the Amended

Contract.

On January 9, 2007, Johnson executed a contract ("DSP Contract") to sell the property to

DSP Venture Group, Inc. ("DSP"), for $40,000,[2] allegedly without notifying the Plaintiffs or

canceling their Amended Contract.  When Stevenson informed Johnson that the HUD loan had

been approved and he was ready, willing, and able to close on the purchase of the property

pursuant to the Amended Contract, Johnson informed Stevenson that she had sold the property to

DSP.  After Stevenson informed the Griffins and James of this development, James allegedly

told Stevenson that he would talk to Johnson to inquire about what was going on.  Additionally,

DSP alleges in its complaint that "upon learning of the pendency" of the DSP Contract,

Stevenson persuaded Johnson to not honor her contract to sell the property to DSP and instead

convey the property to Plaintiffs.  On or about January 14 or 15, 2007, James reported to

Stevenson that Johnson had decided to honor the Amended Contract and sell the property to the

Plaintiffs.  Plaintiffs assert that James recommended they go to closing.  By handwritten letter

dated and sent between January 9, 2007, and January 18, 2007, Johnson allegedly informed DSP

that she was voiding the DSP Contract.  On January 17, 2007, Johnson and Plaintiffs executed a

second amendment to the Plaintiffs' contract ("Second Amended Contract"), stating, *inter alia*,

---

[1] To qualify for the HUD 203(k) Rehabilitation Loan (which included approximately $250,000 of rehabilitation construction costs), Plaintiffs were required to develop rehabilitative designs for the home, solicit bids, select a builder, and submit the rehabilitation costs to the lender.

[2] Johnson was allegedly not provided with a copy of this contract at the time of execution.

that the closing date would be January 19, 2007.   The Plaintiffs closed on the property on January 19, 2007.

Plaintiffs assert that prior to closing, Johnson's attorney, Mr. Carlton Greene ("Greene"), assured Plaintiffs that the DSP Contract had been validly terminated and that title to the property was good, merchantable, and free of liens and encumbrances.   Concurrently with closing on the purchase of the property, Plaintiffs obtained an Owner's Policy of Title Insurance[3] (the "Policy") from Defendant, Chicago Title Insurance Company, Inc. ("Chicago Title Insurance" or "Defendant").   Plaintiffs assert that according to Johnson, after their closing on January 19, 2007, Johnson received a letter dated January 18, 2007, from DSP refusing to void the DSP Contract. Johnson's attorney then sent a letter on January 25, 2007, to DSP informing it that when Johnson signed the DSP Contract, "she thought her prior contract for the property was going to be cancelled . . . [h]owever, it was not cancelled by the purchaser under that contract, and she was required to complete settlement under that contract on January 19, 2007."   (Pl's Ex. 11.)

A few months after the Plaintiffs closed on the property, Plaintiff Stevenson was served as a defendant with the complaint ("DSP Complaint") in the lawsuit styled *DSP Venture Group, Inc. v. Johnson*, Civ. Act. No. CAL07-05012 (Md. Cir. Ct., Prince George's County, filed Feb. 27, 2007) ("DSP Lawsuit"), alleging three causes of action, two of which were against Stevenson: tortuous interference and specific performance, and a breach of contract claim only against Johnson.   The Griffins and James were later added as co-defendants.   Plaintiffs notified Defendant, Chicago Title Insurance, of the lawsuit brought by DSP on September 11, 2007, and at the Defendant's request forwarded the DSP Complaint to Defendant on October 24, 2007.   In a letter dated November 7, 2007, Defendant denied Plaintiffs' request for Defendant to defend

---

[3] The Policy provides, *inter alia*, that the Defendant will insure against any losses "sustained or incurred by the Insured[s] by reason of . . . any defect in or lien or encumbrance on the Title . . . [or] Unmarketable Title."   (Pl's Ex. 7.)

them against the DSP Complaint citing Exclusion 3(a) of the Policy, which excluded defects created or assumed by the insured from coverage under the Policy.  Plaintiffs retained counsel and after two days of trial, which ended in a mistrial, Plaintiffs joined in a global settlement with the other defendants, Johnson and James, in the DSP Lawsuit in November 2008.  Plaintiffs paid DSP $17,000, as their portion of the settlement, and claim that they incurred over $100,000 in attorneys' fees and costs in defending the DSP Lawsuit.  *Id.*  Plaintiffs requested immediate payment for damages they incurred in the DSP Lawsuit, which they asserted were covered under the Policy, in letters addressed to the Defendant on March 3, 2009, April 20, 2009, and June 22, 2009.  Defendant denied each request citing Exclusions 3(a) as noted above and 3(b), which excluded title defects or adverse claims of that the insured had actual knowledge existed but were not known by or disclosed to Defendant.  Plaintiffs filed this complaint in this Court on July 8, 2009, seeking 1) a declaratory judgment that Defendant had a duty to defend and indemnify them in the DSP Lawsuit; 2) for an award of prejudgment interest on all liquidated sums; and 3) of further relief as this Court deemed just and proper.  This Court has subject matter jurisdiction on diversity grounds pursuant to 28 U.S.C. § 1332 (2006) because there is complete diversity of the parties and the amount in controversy exceeds $75,000.  Defendant filed a Motion to Dismiss and Plaintiffs filed a motion styled as Opposition to Chicago Title's Motion for Summary Judgment and Plaintiffs' Cross-Motion for Partial Summary Judgment, all of which are now ripe for ruling.

### **STANDARD OF REVIEW**

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the plaintiff's complaint.  *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S.

506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In two recent cases, the United States Supreme Court clarified the standard applicable to Rule 12(b)(6) motions.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Those cases make clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3 (2007).   That showing must consist of at least "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.

In its determination, the Court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff.  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999).   The Court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).  In addressing a motion to dismiss, a court should first review a complaint to determine what pleadings are entitled to the assumption of truth.  *See Iqbal*, 129 S. Ct. at 1949-50.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 1949.  Indeed, "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context."  *Id.* at 1954.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.*

Conversely, summary judgment is only appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c);
*see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must draw all justifiable
inferences in favor of the nonmoving party, including questions of credibility and of the weight
to be accorded to particular evidence. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520
(1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).   To defeat a motion
for summary judgment, the nonmoving party must provide evidence that shows a genuine issue
of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587
(1986). While the evidence of the nonmoving party is to be believed and all justifiable inferences
drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere
speculation or compilation of inferences. *See Deans v. CSX Transp. ., Inc.*, 152 F.3d 326, 330-31
(4th Cir. 1998). Additionally, hearsay statements or conclusory statements with no evidentiary
basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Fire
Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir.1995).

## ANALYSIS

**I.     Application of General Contract Law to Title Insurance Contracts**

This case is before this Court because of diversity jurisdiction, pursuant to 28 U.S.C. §
1332, and thus the Court must follow the laws of Maryland.  *Merchantile-Safe Deposit & Trust
Co. v. Chi. Title Ins. Co.*, No. CCB-05-2217, 2007 WL 892103, at *4 (D. Md. Mar. 20, 2007).
This case involves a title insurance company's duty to defend and indemnify the insured against
title defects, encumbrances, adverse claims, and similar problems with the property at issue.  In
Maryland, "an insured's duty to defend is a contractual duty arising out of the terms of the
liability insurance policy, and it is broader than the duty to indemnify."  *Marvin J. Perry, Inc. v.
Hartford Cas. Ins. Co.*, 615 F. Supp. 2d 432, 434 (D. Md. 2009) (citations omitted).   Under
Maryland law, "insurance policies, like contracts, are construed as a whole according to the

parties' intentions" and words or terms in the contract are given their ordinary meaning or usage, "unless there is some indication that the parties intended otherwise." *Id.* (citations omitted). Unlike other states, Maryland does not construe insurance policies "most strongly against the insurer," and "only if a term is ambiguous . . . will the ambiguity be construed against the insurer as drafter of the contract." *Id.* (quotations and citations omitted).

An insurer has a duty to defend a suit against the insured by a third party, for any claim that is potentially covered under the insurance policy, even if the third party complaint "does not allege facts that clearly bring the claim within policy coverage," and the potentiality of the success of the underlying claim is irrelevant. *See Browhan v. Transamerica Ins. Co.*, 347 A.2d 842, 850 (Md. 1975) ("The insurer will defend any suit stating a claim within the policy even though 'the claim asserted against the insured cannot possibly succeed because either in law or in fact there is no basis for [the third party's] judgment.'") (citations omitted). The duty to defend applies to all claims alleged in the underlying complaint if at least one claim is potentially covered under the policy. *Utica Mut. Ins. Co. v. Miller*, 746 A.2d 935, 940 (Md. Ct. Spec. App. 2000). In determining whether the underlying claim triggers the insurer's duty to defend, the court must determine: (1) "what [is covered by the insurance policy] and what are the defenses under the terms of the insurance policy," and (2) whether "the allegations in the underlying . . . action potentially bring the tort action within the policy coverage." *Marvin J. Perry, Inc.*, 615 F. Supp. 2d at 434 (citing *St. Paul Fire & Marine Ins. v. Pryseki*, 438 A.2d 282, 285 (Md. 1981)).

Maryland courts have traditionally applied "the eight corners rule," which requires the Court to compare the allegations in the underlying claim against the insured to the insurance policy to determine if the claim is potentially covered under the policy. *Marvin J. Perry, Inc.*, 615 F. Supp. 2d at 434 (citation omitted). However, Maryland has modified the traditional rule

"to permit [the] insured (but not insurers) to produce extrinsic evidence for the purpose of demonstrating the potentiality of coverage." *Id.* (citing *Aetna Cas. & Surety Co. v. Cochrah*, 651 A.2d 859, 866 (Md. 1995)).  Although "any doubt as to whether there is a duty to defend must be resolved in favor of the insured," the insured is not permitted to present a frivolous defense to establish a duty to defend but instead must offer a reasonable basis that the evidence will support that the claim is potentially covered under the policy.  *Marvin J. Perry, Inc.*, 615 F. Supp. 2d at 434; see also *Cochrah*, 651 A.2d at 866.  In any event, the insurer has the burden of proving that a specific exclusion in the policy precludes the claim from being covered by the policy.  *Ace Am. Ins. Co. v. Ascend One Corp.*, 570 F. Supp. 2d 789, 798 (D. Md. 2008) (citations omitted).

### A.  Application of Exclusions 3(a) and 3(b) of the Policy.

Defendant asserts that only the specific performance claim in the DSP Compliant could arguably have created a title defect or an adverse claim with respect to the property that Plaintiffs obtained title insurance to protect.  However, Defendant argues that Exclusions 3a and 3b of the Policy apply to deny Plaintiffs coverage.  Exclusion 3(a) of the Policy provides that the policy does not cover costs, attorney's fees, or other expenses that arise from "defects, liens, encumbrances, adverse claims, or other matters" that are "created, suffered, assumed, or agreed to by the Insured Claimant."  (Pl's Ex. 7.)  This Court explained that this provision, "found in many title insurance policies, is generally construed to exclude knowing and intentional conduct by the insured that results in a title defect or encumbrance."  *Chi. Title Ins. Co.*, 2007 WL 892103, at *8 (citations omitted).  However, "mere negligence is not sufficient to establish a policy exclusion under the terms of 3(a)."  *Id.* at *9 (citing *Brown v. St. Paul Title Ins. Corp.*, 634 F.2d 1103, 1107 n.8 (8th Cir. 1980) ("The cases discussing the applicability of the 'created or suffered' exclusion generally have stated that the insurer can escape liability only if it is established that the defect, lien or encumbrance resulted from some intentional misconduct or

inequitable dealings by the insured . . . .   The courts have not permitted the insurer to avoid liability if the insured was innocent of any conduct causing the loss or was simply negligent in bringing about the loss.")).   The parties have not cited authority that explains whether the insured must engage in some misconduct to invoke the "created or suffered" exclusion under Maryland law, and the Court has not found any.   However, this Court in *Chicago Title Insurance Co.*, explained that legal notice "does not include the critical element of intent common to the definitions of 3(a)'s exclusionary terms."   2007 WL 892103, at *9.

Exclusion 3b provides that the insured may not recover damages resulting from title defects, adverse claims, and other matters "not Known to the [insurer], not recorded in the Public Records at the date of the Policy, but Known to the [insured] and not disclosed to the insurer" prior to issuance of the Policy.   (Pl's Ex. 9.)   The Policy defines "'Knowledge' or 'Known' [as] Actual Knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title."   (*Id.*)   As with Exclusion 3a, Maryland courts have not expressly addressed the meaning of actual knowledge for purposes of determining the applicability of Exclusion 3b.

In this case, Defendant asserts that the DSP complaint against the Plaintiffs alleged that Plaintiff Stevenson, after learning that Ms. Johnson had sold the property to DSP, "persuaded [her] to refuse to honor the [DSP] Contract, and to instead, convey the Property to him."   (Pl's Ex. 8.)   Defendant argues that the language in the third party complaint clearly shows that the claims against Plaintiffs are precluded from coverage under Exclusion 3a because Plaintiffs knew that the property was sold to a third party and intentionally and wrongfully induced Ms. Johnson to forgo the DSP Contract resulting in the adverse claim by DSP to the property. Plaintiffs counter that the DSP complaint merely demonstrates that Plaintiffs had constructive

notice of circumstances which should have led them to further investigate, which amounts to nothing more than negligence that is insufficient to preclude coverage under Exclusion 3a. Although Plaintiffs admit that they were aware of the DSP Contract, they assert that prior to closing on the property, Ms. Johnson and her attorney represented that the DSP Contract could be validly terminated.  They argue that their failure to confirm the valid termination of the DSP Contract merely demonstrates that they possessed constructive notice of the DSP Contract prior to obtaining title insurance, but does not show that they had actual knowledge, which is necessary to invoke Exclusion 3b of the Policy.  Moreover, they contend that they had a superior right to the property because they held a contract with Ms. Johnson, which they amended several times before final settlement on the property and to their knowledge their contract not been terminated, and thus any interference with the DSP Contract would not be wrongful.

The Court recognizes that Maryland law would permit Plaintiffs to assert extrinsic evidence to support their position that the policy exclusions at issue would not bar their claim. Nonetheless, Plaintiffs must demonstrate a reasonable basis that the extrinsic evidence will support their claim for coverage under the policy.  The Court believes that Plaintiffs have sufficiently alleged facts that at least suggest that their conduct may have only been negligent in creating DSP's adverse claim or that they did not have actual knowledge of the claim prior to obtaining title insurance.  However, their self-serving allegations do not permit the Court to determine the full extent of their knowledge without further development of all the pertinent facts.  Accordingly, the Court is not prepared at this early stage in the litigation to determine as a matter of law that the Plaintiffs' claim is or is not barred by the Policy Exclusions at issue because there are too many unanswered questions as to who said what, the extent of the Plaintiffs' knowledge, and the surrounding circumstances involved in the course of the events

alleged in the Complaint.  Therefore, the Court denies both the Defendant's Motion to Dismiss and the Plaintiffs' Motion for Partial Summary Judgment.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Court DENIES Defendant's Motion to Dismiss and DENIES Plaintiffs' Motion for Partial Summary Judgment.  A separate Order shall follow this Memorandum Opinion.

<u>March 19, 2010</u>                                                    <u>            /s/            </u>
       Date                                                    Alexander Williams, Jr.
                                                 United States District Judge